Good morning, Your Honor. I'd like to reserve two minutes. Good morning, counsel. May it please the Court. Your Honor, the Tsoys are Russian citizens with Korean ethnic backgrounds. We don't have issues of credibility here. The judge found them to be credible. Mr. Tsoy testified about the past persecution that the family experienced. As the Court knows, from 1995 to 1998, there were several incidents of past persecution. The I.J. here called one specific event, which occurred in March of 1996, the smoke bombing of their church, their seven-day Adventist, as a hate crime, that it was a terrible matter. But that wasn't enough to rise to the level of persecution. He went on to say that the beating that Mr. Tsoy suffered in fall of 1997 at a demonstration didn't rise to the level of past persecution. He also went on to say that the state accident in April of 1998, where Mr. Tsoy is told to go to the police station, is interrogated by the FSB or the former KGB, interrogated about members of the seven-day Adventist group, and threatened. That didn't rise to the level of past persecution. He went on to say that the losing of his job in May of 1998, where he was fired from his job because the company was now blacklisted because of his lack of cooperation with the FSB or the former KGB, to become a spy or a snitch, that didn't rise to the level of past persecution. But that wasn't enough, Your Honors, here. He failed to look at the totality of the incidents here and failed to see whether or not they had met their claim for future persecution. He didn't even address that issue, Your Honor. I don't know what the Tsoys had to prove here. The last incident that caused Mr. Tsoy to leave was the losing of his job. It was blacklisted. He knew that the FSB was after him because he didn't cooperate. And he left the country. He left the country because he feared staying there. He didn't leave for any other purpose. And the immigration judge had complete disregard for this. But what the immigration judge didn't stop there in the errors. The judge said there has to be some connection between these incidents from 1995 to 1998. That's not the case law here. In effect, they were related because they were seven-day advances. And the cause of the impetus for their letters, their leaflets, the bombing of the church, the beating at the political protest, the stage accident, the subsequent interrogation and threats made by the FSB and the losing of his job and the blacklisting of his company were all related to his religious affiliation. But the immigration judge seemed like he just didn't want to grant asylum to this family, didn't find lack of credibility whatsoever. So he didn't he couldn't rely on that. So he went on to say that, well, this may be a hate crime that the government is unwilling to investigate. In fact, Mr. Tesoi, with the letters that he received, went to the police. No investigation, nothing. What's the evidence in the record that that bomb was thrown to get Mr. Tesoi? Well, Your Honor, he's a member of a record in the evidence of why the bomb was thrown at all. Well, the record indicates that there is animosity towards the seven-day advances members. That may be true. But how about some wackos that are running around with smoke bombs, throwing them around at churches? Does that show that the government or anybody else within the concept of persecution and asylum are doing it? What's in this record? Well, we're not saying – I don't think there's anything in the record to say the government threw the smoke bomb. But certainly the government was not interested in investigating this and taking action to protect Mr. Tesoi. Why is the district – why is the I.J. wrong saying, well, it was a hate crime? There's nothing else in the record that shows there was any reason for the smoke bomb other than some people who just don't like people and throwing bombs? Well, Your Honor, that wasn't the only incident. The Ninth Circuit has indicated that the cumulative effects of the harm and the abuses that may not individually rise to the level of persecution have to be looked at together. So if you have staged accidents, you have abuses, you have threats, you have harassments, they come together to establish past persecution, Your Honor, or they rise to the level of a well-founded fear of future persecution. And the judge didn't do this analysis. Of anyone who's a seven-day Adventist. Of anyone who's a seven-day Adventist living in Russia, we're established in the record with the documentary evidence that the government does not protect these people. After the fall of the Soviet empire, the rise of nationalism and Christian orthodoxy has been on the rise. So anybody in that area of Russia who's a seven-day Adventist can apply for asylum and receive it because the government is allowing persecution of those folks in that area for just being seven-day Adventists. Not just because of being seven-day Adventists. Because from 1995 to 1998, that particular seven-day Adventist's family have been continuously harassed and threatened and harmed. We're not just talking about a seven-day Adventist who says, I'm a seven-day Adventist. I have a fear of future persecution. And there's nothing in the record of either any abuses, any threats, any interrogation. I would agree with you, Your Honor. That person wouldn't have enough. There has to be a nexus between the religious affiliation either to establish past persecution. There has to be some conduct either by the government or by groups that the government is not willing to keep in check. Here we have both. The last incident in April of 1998, he's being questioned and interrogated at the police station by a member of a former KGB or now an agent of the FSB about prominent members of the seven-day Adventist church. He's specifically asked to give information, to be a snitch, to be a spy. And if he doesn't do so, they can't guarantee the security of him and his family. So this goes beyond just a person saying, I'm eligible for asylum and I can meet past persecution or future persecution because I'm simply a member of the seven-day Adventist church. The other issue here is that, and I ask the Court to look at all these incidents in a cumulative fashion. We're not saying that they have to be connected because that's not the case law. But in this case, they are. And that's why it's so important that the Court takes every incident from 1995 to 1998 where he leaves, where there's a common thread through what happened to this family. When the bombing occurred, his wife and his daughter are hospitalized. That is in March of 1996. Again, the government doesn't do anything. He attends a political protest in 1997 because of the death of a family member, of a friend. And he's beaten. Nothing happens there. The stage accident, in fact, there is case law, Your Honor, out of this circuit where it clearly says that stage car accidents, detentions, harassment, those sort of issues in Groy v. INS 280-F3-12-17, that cumulatively, all those things that happened to that individual, cumulative, rose to the level of past persecution. And that's exactly what we have here. And I ask Your Honors to reverse the ruling of the BIA and the IJK and grant these folks asylum in this matter. It's a clear case. We don't have credibility issues, Your Honor. But the immigration judge simply, and mistakenly, analyzed all these events incorrectly and just simply failed to address future persecution whatsoever. I mean, he just stopped at past persecution, saying that there was no past persecution. These incidents don't rise to that level of past persecution. And we have to show some that they're connected. We beg to differ with that. But he simply failed to even address future persecution. Counsel, you have a little more than half a minute left, if you'd like to save it for about all. Yes, thank you. For Mr. Lowe. I have a question at the outset on this that concerns me about the way in which the immigration judge analyzed the issue related to the bombing of the church. And in which the IJ seems to suggest that all evidence must show that an individual has been singled out for persecution in order to be effective to carry the petitioner's burden of proof. And I'd like for you to talk to me about how that analysis squares with the regulation 208.13A2 sub little 3, which talks about circumstances in which a person doesn't have to always show that they were singled out. For example, this isn't this evidence, but let's assume that someone from the government stood up and said, I'm going to go bomb churches because we, the government, hate these people, and I'm just going to indiscriminately bomb churches. The fact that they don't name an individual doesn't really matter, does it? Right, Your Honor. I don't disagree with anything you're saying. I think it's a misreading of the immigration judge's ruling to say that he was not adhering to the regulation. He was pointing out that there was no evidence of being singled out regarding the smoke bomb. That's true. But the question is, well, then, is there evidence under the regulation showing a pattern of persecution of people who are like the petitioners here to support a claim where there is not a signaling out? And if you look at the administrative decision, page 93, I believe, we're talking about ---- Let me just, I want to stay with the immigration judge on page 94 of the record. He does say it, I think he means the bombing, was definitely directed to terrorize and intimidate the church. And he says that it's a hate crime. And then he also acknowledges that people are hurt and terrified. But he said these incidents were not directed particularly or individually at the lead respondent or his family members. They were directed generally at the church. And then he seems to dismiss that as therefore not being persuasive. And I guess that reasoning concerned me, that he seems to acknowledge that it's directed to terrorizing everybody in the church. But, gee, they didn't know the names of these people, so it doesn't matter. And I guess that really troubled me. Well, I, let me just pull out the, my reading on 93 is he's saying that it's not intended, there's no evidence that it was intended to terrorize or intimidate the church. And then 94, 93, just to make sure I'm not misreading that. And on 94, he says it's a single incident, but there's no record of the refusal of the government to stop it. It's a single incident. And it's speculation by the petitioners here that the government couldn't or wouldn't help. So it still has to be a pattern of persecution by the government to get into that regulation and to avoid the singling out requirement. So if I understand your argument correctly, even if he's wrong about his analysis of singling out, there's another good reason to go with what he says, which is that there's no demonstration that it's the government either doing it or refusing to do anything about it. No, I'm not saying that he's wrong. I'm saying he, the immigration judge should always look at whether they're being singled out and then look at whether they fall within the other exception. He's doing both parts, not singled out and, well, with the group being persecuted in general. And he's saying, well, this is one incident. There's no speculation that the state is refusing to stop in general. So they don't meet the second criteria because if you look on page 94, I think that's a fair reading that he's saying that that's, there's not a pattern of persecution by the state against the church, that there's not a pattern of smoke bombs against Seventh-day Adventists throughout that region, which they're not investigating or permitting to go on. So is it your view of the regulation that it would apply only if there are multiple bombings of churches and not a single bombing of a church, that you'd have to show that it was, let's say, one church bombing is directed at these particular groups? It requires a pattern, which you then, you fall into a group which is subject to this pattern. It's sort of, you know, if you go back to the Holocaust time, if you're a Jew in Nazi Germany and you haven't yet been singled out, you don't have to wait for that sort of thing. If your synagogue gets bombed and you're injured, it doesn't count as persecution? If there's a pattern of... It either does or it doesn't. In your understanding of the regulation, if one synagogue or one church is bombed and the people inside are hurt, and it's done because of their religion, is it your position that the regulation still requires the petitioner to demonstrate that they personally were targeted, or is it enough for them to demonstrate that the religious institution in which they were housed at the time was targeted? I'm asking for your interpretation of the regulation. Right. The question is, does the evidence compel a finding of persecution? No, I'm asking about how you interpret the regulation. The regulation, I think, would give the immigration judge leeway to say that there's that one incident where, as in this case, there's no evidence that it was necessarily targeting the church, that that's speculation. The petitioner's own testimony... You're arguing the facts. I'm asking how to read the regulation. And your reading of pattern and practice, does pattern and practice require more than one church or synagogue bombing, or is one bombing enough? If it's one bombing where the... It's hard for me to answer that in the abstract, Your Honor. If you have one incident which shows a state assent to persecution in general, or it can be one big incident which can be very telling. So I don't think I can answer that in the abstract. The immigration judge would have latitude in that instance, based upon the particular facts, to say whether a pattern can be established by one incident or not. If we were to disagree with the immigration judge's analysis of the regulation and how it applies to a situation of this kind, and I know you don't agree with that, but I'd like you to assume that for the sake of the question. If we were to disagree with the way in which he analyzed the evidence, what would be the proper remedy? Would we remand it for a proper understanding, or would we apply the regulation ourselves and determine what the answer is? What is your view? I think you would remand it to see whether, if you believe it was being misapplied, whether the agency and the fact finders which are assigned this role by Congress would find that it's past persecution under that correct reading, in your view. Not to argue the record again, but even the petitioner's own testimony is that it could have been rowdy kids as opposed to any persecution by the state or necessarily singling out trying to harass them. That's why I asked you the question earlier about whether those are two independent bases to support what the immigration judge did. If under any understanding of that regulation, the petitioner should still lose because there's no connection to the government. That's, I guess, what I'm asking. Right. That's certainly part of the immigration judge's finding and the basis for sustaining and finding substantial evidence supporting that element of the immigration judge's decision. I think counsel tried to tie it all together when I asked him the question, is that a series of events, not just the smoke bomb, that shows that they're after this group, and I'm not too sure whether he meant Adventist group, but the family within the Seventh-Day Adventist group. He had to tie it to something else because, as I understand the record, all we have is a smoke bomb. There was no identification, no claiming of responsibility that I can find in the record, just a smoke bomb. Right. Anywhere, anybody, for any reason. It happened to hit a church. Now, the fact that a bomb hits a church is that fact. That's all. Is that what you're saying? That's what we're saying. There's also, I think, the absence of evidence of a pattern of churches being harassed in that way with smoke bombs or otherwise and then a failure of the state to. . . in the south of churches. If in this area or in Russia all churches were being smoke bombed and they were ticketed to some group or whatever, then you'd have a different fact base, right? Right. I mean, in our own country, in the southeast, there was a substantial number of church bombings, which the fact that one or two churches were bombed is a very unfortunate event. It's not necessarily self-persecution by the state. If you like, I could address the other allegations here. We have the claim at a protest when a young soldier committed suicide that Mr. Tsoi was hit, but the record shows that it was a protest, was allowed, and at some point was broken up by the military to keep the peace and to keep a military base open, which the immigration judge was set a legitimate purpose. And although forced, Mr. Tsoi's own testimony was that he was not hurt. He said he was a little depressed afterward, but he was not badly hurt. And then finally, there's the claim that the FSB threatened him and the loss of job. In his application for asylum, he tells a little different story. He says that when they approached him, he said he'd think about it, and then they left the country. At the immigration hearing, he says he added a new twist, that he refused, and then they said they couldn't guarantee his safety and that he was blacklisted and lost his job. You know, this is one incident of, it's believed, religious discrimination and harassment. Losing one job is not compelled, the finding of persecution, by an immigration judge. I think the record shows that even though he's a seventh-day abbotist, he was a very successful businessman in his country and was able to hold an important job there and make a good living. The fact that one job was denied him doesn't require the immigration judge to find persecution. Thank you, Your Honor. Thank you, Counsel. You have a short time remaining. Thank you. Your Honor, in the record, the petitioners presented several documentary evidence that established that the Russian central government turned a blind eye to the local and provincial governments targeting harassment of non-Orthodox religious minority groups. They even turned in 1998 country reports. That was undisputed by the respondents. And to argue now that that was not present is a misstatement of fact. If they were going to contest the issue of the pattern and practice, the time that they should have done it was before the immigration judge, before those documents were accepted. The other issue I wanted to address quickly was there was no adverse credibility finding here. Mr. Tesoi's elaboration of what occurred before he left, when he lost his job, after he was interrogated, after he was blacklisted, is just that, an elaboration, Your Honor. It is not inconsistent with what he claimed in his application. Thank you. Thank you, Counsel. We appreciate the arguments of both counsel. The case just argued is submitted, and we'll turn to the final.
judges: Brunetti, Tg Nelson, Graber